UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

**WILLIAM WILKIE,**

                Plaintiff,           1:11-cv-1086
                                                    (GLS/RFT)

     v.

**THE GOLUB CORPORATION,**

                Defendant.
_____

**APPEARANCES:**                                **OF COUNSEL:**

**FOR THE PLAINTIFF:**
DeLorenzo Law Firm                      CORY R. DALMATA, ESQ.
670 Franklin Street, 2nd Floor
Schenectady, NY 12305

**FOR THE DEFENDANT:**
Parisi, Coan Law Firm                    PATRICK J. SACCOCIO, ESQ.
376 Broadway
2nd Floor
Schenectady, NY 12302

**Gary L. Sharpe**
**Chief Judge**

## MEMORANDUM-DECISION AND ORDER

### I. Introduction

    Plaintiff William Wilkie commenced this action against defendant The

Golub Corporation, alleging employment discrimination under Title I of the

Americans with Disabilities Act (ADA)[1] and the New York Executive Law §§ 296 and 297 ("Human Rights Law").[2] (Compl., Dkt. No. 1.) Pending before the court is Golub's motion for summary judgment, on the grounds that Wilkie failed to exhaust the administrative remedies available to him and, alternatively, that Wilkie was not a qualified individual with a disability pursuant to the ADA. (Dkt. No. 15, Attach. 3 at 4.) For the reasons that follow, Golub's motion is granted.

## II. Background

### A. Facts

Wilkie was employed by Golub's transportation department as a truck driver beginning in 1995. (Def.'s Statement of Material Facts (SMF) ¶ 1, Dkt. No. 15, Attach. 3 at 4-6.) In 2004, Wilkie was diagnosed with type II diabetes, which he controlled by way of diet, exercise, and an oral hypoglycemic, but not the use of insulin. (*Id.* ¶ 5; Compl. ¶¶ 11-12.)

---

[1] 42 U.S.C. §§ 12101-12213.

[2] Federal ADA claims and claims of disability discrimination under the New York State Human Rights Law are governed by the same legal standards. *Graves v. Finch Pruyn & Co., Inc.*, 457 F.3d 181, 184 n.3 (2d Cir. 2006); *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 332 n.1 (2d Cir. 2000). Thus, Wilkie's state law disability discrimination claim survives or fails on the same basis as his ADA claim.

On August 16, 2010, Wilkie underwent a physical examination in conjunction with the certification process to drive a commercial motor vehicle. (Def.'s SMF ¶ 7.) This examination was performed by Jennifer Hilligrass, a registered nurse employed by Access Health Systems ("Access"). (Dkt. No. 18, Attach. 3 at 3-4.) Golub had contracted with Access to perform examinations of its truck drivers as required by the Department of Transportation (DOT) in order to certify the drivers to operate a commercial motor vehicle in interstate commerce. (Dkt. No. 15, Attach. 1 ¶¶ 8-9.) Upon completion of that examination, Wilkie was informed that he had passed the physical, and his medical certification was renewed. (Def.'s SMF ¶ 8.) However, the following day, Dr. Warren Silverman, a physician employed by Access and the physician responsible for performing DOT physicals for Golub's truck drivers, determined Wilkie's blood sugar levels to be too high to safely operate a commercial motor vehicle. (*Id.* ¶¶ 8-10; Dkt. No. 15, Attach. 1 ¶ 9.)

Following Dr. Silverman's determination, Wilkie was told that his medical certification would have to be revoked. (Def.'s SMF ¶ 9; Dkt. No. 15, Attach. 4 at 23.) Consequently, Wilkie was told he could no longer work as a truck driver for Golub. (Def.'s SMF ¶ 12; Dkt. No. 15, Attach. 4

3

at 32.) Thereafter, Wilkie filed written charges of employment discrimination with the Equal Employment Opportunity Commission (EEOC) and was issued a "Right to Sue" letter by the EEOC. (Compl. ¶ 8.)

B. **Procedural History**

Wilkie commenced this ADA action on September 13, 2011. (*See generally* Compl.) In his pleading, Wilkie alleges that he was discriminated against as a result of his diabetes, in violation of the ADA and the New York State Human Rights Law. (*Id.* ¶¶ 18-34.) Consequently, he seeks compensatory, consequential and punitive damages, and attorney fees. (*Id.* at 5.) Following joinder of issue, (Dkt. No. 6), Golub moved for summary judgment. (Dkt. No. 15.)

### III. Standard of Review

The standard of review pursuant to Fed. R. Civ. P. 56 is well established and will not be repeated here. For a full discussion of the standard, the court refers the parties to its decision in *Wagner v. Swarts*, 827 F. Supp. 2d 85, 92 (N.D.N.Y. 2011).

### IV. Discussion

A. **Failure to Exhaust Administrative Remedies**

Golub first moves for summary judgment on the ground that Wilkie has not exhausted the administrative remedies set forth in the DOT's regulations with respect to challenging determinations of an individual's qualification to operate a commercial motor vehicle in interstate commerce. (Dkt. No. 15, Attach. 3 at 7-9.)

The DOT's Federal Motor Carrier Safety Regulations governing the physical qualifications of drivers of commercial motor vehicles are set forth in 49 C.F.R. § 391.41. Pursuant to these regulations, drivers of commercial motor vehicles in interstate commerce must be "medically certified as physically qualified to do so." 49 C.F.R. § 391.41(a)(1)(i). To be "physically qualified," an individual must both: (1) meet the standards set forth in the regulations, that is, not suffer from any of the noted impairments which may disqualify one from driving a commercial vehicle; and (2) pass a required medical examination and be certified by the examining physician. *Id.* § 391.41(a)(3)(i); 49 C.F.R. § 391.43.

The regulations also set forth a procedure by which an individual may apply for further DOT review of his qualifications following an initial determination by the driver's or motor carrier's physician. *See* 49 C.F.R. § 391.47. If an individual is dissatisfied with the results of a medical exam or

5

the manner in which it was conducted, he may petition DOT's Director, Office of Bus and Truck Standards and Operations for additional review of his qualification.  *Id.*; *see Campbell v. Fed. Express Corp.*, 918 F. Supp. 912, 917-18 (D. Md. 1996).

There is a "long-settled rule of judicial administration that no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted." *Myers v. Bethlehem Shipbuilding Corp.*, 303 U.S. 41, 50-51 (1938).  "A party who fails to exhaust administrative remedies is precluded from raising those issues in the district court." *EEOC v. Allied Sys.*, 36 F. Supp. 2d 515, 522 (N.D.N.Y. 1999) (quoting *Prado v. Cont'l Air Transp. Co.*, 982 F. Supp. 1304, 1308 (N.D. Ill. 1997)).  Courts are hesitant to "abrogate clear congressional intent which vests driver fitness issues in the Secretary of Transportation."  *Id.* (citing 49 U.S.C. § 31136(a)(3)).  Rather, courts prefer to leave the determination of "whether a physician's examination procedures were flawed or conclusions erroneous" to DOT and its Office of Motor Carrier Research and Standards.  *Id.* (quoting *Prado*, 982 F. Supp. at 1308).

Wilkie argues that the regulations' language requiring "proof that

6

there is a disagreement between the physician for the driver and the physician for the motor carrier concerning the driver's qualifications," 49 C.F.R. § 391.47(b)(2), means that without a direct conflict of physicians' opinions, this administrative procedure would be inapplicable to Wilkie's claim, (Dkt. No. 18 at 7-11). In these circumstances, the court is not persuaded by this argument.

For example, in *Prado*, on facts similar to those here, a prospective employee was unable to pass the requisite physical examination, and therefore was denied employment as a driver with a passenger transport company. *Prado*, 982 F. Supp. at 1307. Although the plaintiff there was only examined by one physician, the district court still held that the plaintiff's objections to the physician's "flawed physical examination procedures and medical conclusions" should have been properly brought before the DOT Office of Motor Carrier Research and Standards. *Id.* at 1307-08. Similarly, here, Wilkie is contesting Dr. Silverman's determination that he should not be certified based on his high blood sugar levels. (Dkt. No. 18 at 5-6.) Whether Dr. Silverman's examination procedures or medical conclusions are flawed with respect to Wilkie's fitness to drive a commercial motor vehicle are questions best

7

answered by the DOT and its expertise in this matter. *See Prado*, 982 F. Supp. at 1307-08; *Allied Sys.*, 36 F. Supp. 2d at 522; *Campbell*, 918 F. Supp. at 919 (noting that questions of whether drivers meet DOT qualifications for the position "fall[] squarely within the regulatory scheme (and substantive expertise) of DOT."); *Myers v. J.B. Hunt Transp., Inc.*, No. 1:05CV00717, 2006 WL 3479001, at *4 (M.D.N.C. Nov. 30, 2006) (holding that the proper forum for "[w]hether [plaintiff's] examination was properly conducted" is the Office of Motor Carrier Research and Standards). If Wilkie wanted to challenge Dr. Silverman's determination that he failed the DOT physical, his proper course of action would be to obtain the opinion of a second medical provider that he should have been certified, and submit these conflicting opinions to the DOT appeal procedure. *See Myers*, 2006 WL 3479001, at *4. For these reasons, we find that under these circumstances, Wilkie first was required to exhaust his administrative remedies, and his appropriate recourse was to first pursue the procedure established by DOT.

**B.     "Qualified Individual" Under the ADA**

Golub next argues that summary judgment is appropriate because Wilkie is not a qualified individual with a disability as required by the ADA.

(Dkt. No. 15, Attach. 3 at 10-14.) The ADA prohibits discrimination against any "qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). To state a prima facie case of disability discrimination under the ADA, a plaintiff must show that:

> (1) his employer is subject to the ADA; (2) he was disabled within the meaning of the ADA; (3) he was otherwise qualified to perform the essential functions of his job, with or without reasonable accommodation; and (4) he suffered adverse employment action because of his disability.

*Giordano v. City of N.Y.*, 274 F.3d 740, 747 (2d Cir. 2001) (quoting *Heyman v. Queens Vill. Comm. for Mental Health for Jamaica Cmty. Adolescent Program, Inc.*, 198 F.3d 68, 72 (2d Cir. 1999)). The parties do not dispute the first two elements in this case. Therefore, in order to maintain his ADA claim, Wilkie must demonstrate that he is qualified for the position, with or without reasonable accommodation. *See Giordano*, 274 F.3d at 747; *Allied Sys.*, 36 F. Supp. 2d at 520.

As discussed above, the DOT has promulgated regulations which establish certain qualifications for drivers of commercial motor vehicles in interstate commerce. *See* 49 C.F.R. §§ 391.41, 391.43. All drivers must

9

be "medically certified as physically qualified" by passing a medical examination and receiving certification by the examining physician. 49 C.F.R. § 391.41(a)(1)(i). Without this certification, therefore, an individual is not qualified to drive a commercial motor vehicle in interstate commerce. *See id.*; *Bay v. Cassens Transp. Co.*, 212 F.3d 969, 973-74 (7th Cir. 2000); *Allied Sys.*, 36 F. Supp. 2d at 521.

Golub asserts that DOT regulations required Wilkie to undergo the physical examination, and also prohibited Golub from employing Wilkie as a driver when the medical examiner refused to certify him. (Dkt. No. 15, Attach. 3 at 12-14.) It is undisputed that, at the time Wilkie was placed on disability leave, following Dr. Silverman's determination, Wilkie was no longer DOT-medically certified to drive a truck. (Dkt. No. 15, Attach. 4 at 30.) This "failure to obtain [DOT medical certification] precluded him from being a qualified individual with a disability," and therefore prevents him from maintaining his ADA claim against Golub. *Allied Sys.*, 36 F. Supp. 2d at 521; *see Cole v. Roadway Express, Inc.*, 218 F. Supp. 2d 350, 356 (W.D.N.Y. 2002) (finding summary judgment appropriate where the evidence shows that the employer was "merely attempting to comply with applicable regulations," and holding that "[o]nce medical certification is

10

denied, even if the denial was without basis, the [employer] may *not* hire the [driver] to drive a truck on public roads without violating DOT regulations.").

Here, there is no genuine factual dispute regarding Wilkie's failure to obtain DOT certification. The undisputed evidence shows that Wilkie was denied DOT certification to drive a commercial motor vehicle in interstate commerce when Dr. Silverman determined that Wilkie did not pass the physical exam. Without such certification, and with no evidence to the contrary, Wilkie has failed to establish that he is qualified for the job, and therefore is unable to maintain a discrimination claim under the ADA. Because the standards under the ADA and the New York Human Rights Law are the same, Wilkie's claims under the Human Rights Law are also dismissed. If Wilkie had a complaint regarding Dr. Silverman's decision not to certify him, Wilkie's proper course of action would have been to pursue the administrative mechanism established by the DOT. Accordingly, the court concludes that Golub is entitled to summary judgment.

## V. **Conclusion**

**WHEREFORE**, for the foregoing reasons, it is hereby

11

**ORDERED** that Golub's motion for summary judgment (Dkt. No. 15) is **GRANTED**; and it is further

**ORDERED** that Wilkie's complaint (Dkt. No. 1) is **DISMISSED**; and it is further

**ORDERED** that the Clerk close this case; and it is further

**ORDERED** that the Clerk provide a copy of this Memorandum-Decision and Order to the parties.

**IT IS SO ORDERED.**

September 24, 2013
Albany, New York

*Gary L. Sharpe*
Chief Judge
U.S. District Court